UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SWIVEL RENTAL & SUPPLY, L.L.C.,                 Civil Action No.: 6:18-01141
Plaintiff

VERSUS                                           Judge: Michael J. Juneau

PETRO PULL, LLC, BACCHUS                         Magistrate Judge: Carol B.
LIFTING, LLC, BOWLS, SLIPS &                     Whitehurst
GRIPS, LLC D/B/A BS&G
RENTALS, LLC, DOW DROBISH,
AND JASON BELLARD
Defendants

## <u>MEMORANDUM OPINION AND ORDER</u>

On February 14, 2020, the Court held a hearing to determine the proper construction of the

disputed claim terms in United States Patent No. 9,650,841 ("the '841 Patent"), and United States

Patent No. 9,938,778 ("the '778 Patent"). The Court has considered the arguments made by the

parties at the hearing and in their claim construction briefs and supporting documents. Dkt Nos.

56 (Swivel's Opening Claim Construction Brief); 57 (Defendants' Responsive Claim Construction

Brief); and 58 (Swivel's Reply Claim Construction Brief). The Court has considered prevailing

law governing the proper construction of disputed patent claim terms. *Phillips v. AWH Corp.*, 415

F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135

S. Ct. 831, 841 (2015). The Court issues this Memorandum and Order construing disputed

limitations in light of these considerations.

## I.      THE PATENTS-IN-SUIT

The '841 and '778 Patents are both entitled "Support Apparatus for Supporting Down Hole

Rotary Tools," and share a substantially identical specification.[1]  Both patents claim priority to a

provisional application dated September 25, 2009.  In general, the patents-in-suit relate to portable

systems used to perform projects on oil wells where the original drilling rig is unavailable or has

been removed.  '841 Patent at 3:39-55.  These portable systems are often utilized in "plugging and

abandonment" operations where well casing is lifted out of the wellbore and removed for reuse or

recycling.  *Id.* at 1:15-3:35.  The patents-in-suit disclose the structures used to create the claimed

system as summarized in the abstract:

> A portable mast assembly is comprised of a skid assembly
> having a horizontally oriented frame comprised of longitudinally
> extending support beams and a mast assembly having
> at least two vertically extending columns that are supported
> directly upon a longitudinally extending mast beam
> without an intervening track or roller. A means for moving
> the mast beams along the top of the extending support beams
> of the frame without a roller is provided.

'841 Patent Abstract.  The claims recite specific relationships between selected structures that vary

between claims.  '841 Patent at 7:35-14:24; '778 Patent at 7:35-10:39.  Both parties maintain that

the claims require a mast assembly that moves laterally or horizontally along an underlying support

structure.  Docket 56 at 6; Docket 57 at 4.  The fundamental dispute between the parties is whether

the asserted claims require the use of tracks or rollers between the mast assembly and the

underlying support structure, or are the claims limited to cases where the mast assembly bears

directly upon the underlying support structure.  *Id.*

## II.     LEGAL STANDARDS

"It is a bedrock principle" of patent law that "the claims of a patent define the invention

to which the patentee is entitled the right to exclude."  *Phillips,* 415 F.3d at 1312 (quoting

---

[1] Citations herein are made to the column:  line numbers of the '841 Patent to avoid duplicative
citations to the substantially identical '778 Patent.

*Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, the initial focus is always the intrinsic evidence. *Id*. at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule is that each claim term is construed according to its ordinary meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003.)

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.' " *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). Further, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id*. (quoting *Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is also instructive in claim construction because it is evidence of how the U.S. Patent and Trademark Office ("USPTO") and the inventor understood the patent as the claims were formed. *Phillips*, 415 F.3d at 1317 ("Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."). However, caution must be taken where the prosecution history is unclear or ambiguous. *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Generally, extrinsic evidence such as technical dictionaries, treatises and expert testimony is "less reliable than the patent and its prosecution

history in determining how to read claim terms." *Id.* No party sponsored or relied on extrinsic evidence in this case. Hearing Transcript 2/14/20 at 9:19-24, 40:25-41:4.

## III. AGREED TERMS

The parties have reached agreement as to the following term in the Joint Claim Construction and Prehearing Statement:

| Claim Term | Parties' Agreed Construction |
|---|---|
| **Claim 1 of the '778 patent: means for moving said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame** | "at least one horizontally oriented actuator having an extendible and retractable rod, the actuators being hydraulic, pneumatic, or mechanical (such as a horizontally oriented screw-type actuator), and equivalents thereof, for moving said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame" |

Dkt. 49, at 1-2. Notably, the parties' agreed construction does not separate the recited function from the corresponding disclosed means to accomplish that function, and equivalents as required under 35 U.S.C. §112, paragraph 6. To the extent there is any doubt, the function in this claim element is, "moving said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame." The corresponding disclosed structure (with slight clarification) is, "at least one horizontally oriented actuator having an extendible and retractable rod, the one or more actuators being hydraulic, pneumatic, or mechanical (such as a horizontally oriented screw-type actuator), and equivalents thereof."

Although this construction was agreed in the Joint Claim Construction Statement, the parties also briefed this term as part of the disputed claim terms. In particular, Defendants seem to contest the construction of the recited function, substituting "sliding" for "moving," and the Plaintiff urges plain meaning. To the extent the parties now desire to withdraw their consent to the agreed construction, they need to demonstrate good cause to withdraw their agreement and

more squarely address the means-plus-function analysis of this term. Unless a party demonstrates good cause to revisit the agreed construction, the Court will hold the parties to their agreement and adopt the joint proposal for this term.

The parties agreed to the construction of this means-plus-function limitation for claim 1 of the '778 patent. At the claim construction hearing, counsel for Plaintiff represented that the same construction extended to this term as it appears in claim 3. Hearing Transcript 2/14/20 at 13:5-8. Defendants did not dispute that representation and the Court finds that construction of this limitation is applicable to both claims 1 and 3. *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'" (quoting *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005)).

## IV. THE DISPUTED TERMS

As noted, the fundamental dispute in this case comes down to a single issue – whether the asserted claims bar the use of tracks or rollers between the mast assembly and the underlying support beams and require that the mast assembly bear directly upon the underlying support beams. Docket 56 at 6; Docket 57 at 4. This issue appears in different manifestations throughout the asserted claims, where the claims express the same "without intervening tracks or rollers"/supported "directly" concepts as follows:

| Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **'841 element 10(b):** **each said longitudinally extending mast beam being aligned with, positioned and supported upon one of said longitudinally extending support surfaces of said frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | each said longitudinally extending mast beam being aligned with, positioned and supported ***directly*** upon one of said longitudinally extending support surfaces of said frame |

| Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **'841 element 10(d):** **will move said mast beams along the top of said longitudinally extending support surfaces** | No construction necessary – plain and ordinary meaning to one of skill in the art | will ***slide*** said mast beams ***directly*** along the top of said longitudinally extending support surfaces, ***without intervening tracks or rollers,*** |
| **'841 element 16(b):** **each said longitudinally extending mast beam aligned with and supported by said bearing surface of one of said longitudinally extending support beams of said frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | each said longitudinally extending mast beam aligned with and supported ***directly*** by said bearing surface of one of said longitudinally extending support beams of said frame |
| **'841 element 16(c):** **slide said mast beams of said mast assembly upon and along said bearing surface of said longitudinally extending support beams of said frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | slide said mast beams of said mast assembly ***directly*** upon and along said bearing surface of said longitudinally extending support beams of said frame ***without intervening tracks or rollers*** |
| **'841 element 16(g):** **said mast assembly is movable upon said skid** | No construction necessary – plain and ordinary meaning to one of skill in the art | said mast assembly is movable ***by sliding directly*** upon said skid |
| **'841 element 16(h):** **when the mast assembly moves between said first and second positions** | No construction necessary – plain and ordinary meaning to one of skill in the art | when the mast assembly ***slides*** between said first and second positions ***without intervening tracks or rollers*** |
| **'841 element 24(d):** **a mast beam that is aligned with and that rests upon and transfers load to a said base beam** | No construction necessary – plain and ordinary meaning to one of skill in the art | a mast beam that is aligned with and that rests ***directly*** upon and transfers load to a said base beam |
| **'841 element 24(e):** **the mast being movable by sliding upon the base beams** | No construction necessary – plain and ordinary meaning to one of skill in the art | the mast being movable by sliding ***directly*** upon the base beams, ***without intervening tracks or rollers*** |

| Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **'841, element 24(h):** **an actuator that moves the mast assembly relative to the base** | No construction necessary – plain and ordinary meaning to one of skill in the art | an actuator that ***slides*** the mast assembly relative to the base ***without intervening tracks or rollers*** |
| **'778 element 1(b):** **each of said at least two longitudinally extending mast beams positioned and supported by one of said at least two longitudinally extending support beams of said horizontally oriented frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | each of said at least two longitudinally extending mast beams positioned and supported ***directly on*** one of said at least two longitudinally extending support beams of said horizontally oriented frame |
| **'778 element 1(c):** **means for moving said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame[2]** | No construction necessary – plain and ordinary meaning to one of skill in the art | means for ***sliding*** said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame ***without intervening tracks or rollers*** |
| **'778 claim 2:** **slidably retaining said at least two longitudinally extending mast beams upon said at least two longitudinally extending support beams of said horizontally oriented frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | slidably retaining said at least two longitudinally extending mast beams ***directly*** upon said at least two longitudinally extending support beams of said horizontally oriented frame ***without intervening tracks or rollers*** |

---

[2] Although the construction of this term was agreed, the parties also included this term as part of the disputed construction analysis in this case. Notably, the parties overlook the status of this recitation as a means-plus-function element, which requires treatment under pre-AIA version of 35 U.S.C. §112, paragraph 6. The Court resolved this dispute *supra,* where the parties' agreed construction was adopted.

| Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **'778 claim 3:**<br>**means for moving said at least two longitudinally extending mast beams along the top of said at least two longitudinally extending support beams [of said horizontally oriented frame]** | No construction necessary – plain and ordinary meaning to one of skill in the art | means for ***sliding*** said at least two longitudinally extending mast beams ***directly*** along the top of said at least two longitudinally extending support beams[3] |
| **'778 element 13(b):**<br>**each of said at least two longitudinally extending mast beams being positioned and supported by one of said at least two longitudinally extending support beams** | No construction necessary – plain and ordinary meaning to one of skill in the art | each of said at least two longitudinally extending mast beams being positioned and supported ***directly*** by one of said at least two longitudinally extending support beams |
| **'778 element 13(d):**<br>**move said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams** | No construction necessary – plain and ordinary meaning to one of skill in the art | ***slide*** said at least two longitudinally extending mast beams ***directly*** along said at least two longitudinally extending support beams ***without intervening tracks or rollers*** |
| **'778 claim 15:**<br>**a guide for slidably retaining said at least two longitudinally extending mast beams upon said at least two longitudinally extending support beams of said horizontally oriented frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | a guide for slidably retaining said at least two longitudinally extending mast beams ***directly*** upon said at least two longitudinally extending support beams of said horizontally oriented frame ***without intervening tracks or rollers*** |

---

[3] The Court notes that Defendants' proposed construction of '778 Claim 3 is different from the identical element in '778 Claim 1(c).

| Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **'778 element 19 (b):** **a mast assembly having at least two vertically extendable and retractable columns, each of said vertically extendable and retractable columns supported on a corresponding longitudinally extending mast beam, each said longitudinally extending mast beam positioned upon and supported by one of said longitudinally extending support beams of said frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | a mast assembly having at least two vertically extendable and retractable columns, each of said vertically extendable and retractable columns supported on a corresponding longitudinally extending mast beam, each said longitudinally extending mast beam positioned upon and supported ***directly*** by one of said longitudinally extending support beams of said frame ***without intervening tracks or rollers*** |
| **'778 element 19 (c):** **said horizontally oriented actuator will slide said longitudinally extending mast beams of said mast assembly along said longitudinally extending support beams of said horizontally oriented frame** | No construction necessary – plain and ordinary meaning to one of skill in the art | said horizontally oriented actuator will slide said longitudinally extending mast beams of said mast assembly ***directly*** along said longitudinally extending support beams of said horizontally oriented frame ***without intervening tracks or rollers*** |

## V.     ANALYSIS

Plaintiff submits that none of the disputed terms require construction beyond "plain and ordinary meaning to one of ordinary skill in the art." Dkt. 56, generally. Plaintiff did not submit a formal definition of the plain and ordinary meaning of any claim term, relying instead on the words of the claims themselves without modification or explanation. *Id.* Defendants seek construction of claim language related to the previously noted single overarching issue – whether a mast structure recited in the asserted patent claims may move laterally or horizontally utilizing tracks or rollers, or must bear directly on an underlying support surface without such tracks or rollers. Dkt. 57, generally. The Court analyzes each species of intrinsic evidence in turn.

### A.    Claim Language

The analysis of the dispute in this case begins with the words of the claims themselves. *Phillips*, 415 F.3d at 1312 (Words of a claim "are generally given their ordinary and customary meaning." (quoting *Vitronics*, 90 F.3d at 1582)); *Renishaw PLC,* 158 F.3d at 1248 ("The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim.").

Here, for the majority of the disputed limitations, Defendants seek to add words into the claims without construction or alteration of the actual claim language.  For example, in '841 element 10(b), Defendants propose that the phrase "each said longitudinally extending mast beam being aligned with, positioned and supported upon one of said longitudinally extending support surfaces of said frame" be construed as "each said longitudinally extending mast beam being aligned with, positioned and supported ***directly*** upon one of said longitudinally extending support surfaces of said frame."  For this limitation, Defendants argue that the term "supports" requires a construction that results in the additional term "directly" but rely primarily on the specification in support, as discussed *infra.*  Dkt. 57 at 19-20.

For other limitations such as those using the term "move," such as '841 element 10(d), Defendants seek to replace the term "move" with "slide" but then proceed to add additional terms to the existing claim language without construction or alteration: will ~~**move**~~ *slide* said mast beams ***directly*** along the top of said longitudinally extending support surfaces, ***without intervening tracks or rollers*** (bold for additions, strikethrough for deletion).  In briefing, Defendants relied primarily on the specification and its consistent use of rollers or other structures to provide the movement of the claimed mast structures, but did not make specific arguments about the claim language itself.  At argument, Defendants stated that the word "slide" as used in the claims does in fact connote to one of ordinary skill that movement is accomplished without the aid of rollers.  However, a close examination of the intrinsic record does not reveal support for that contention and neither party proposed reliance on extrinsic evidence.[4]

---

[4] Defendants state that, "[T]he specification makes it clear that the inventor intended for the mast beams and mast assembly to 'move' by way of a sliding means that does not include the use of

Plaintiff also argues that the construction maxim of claim differentiation counsels against Defendants' construction proposals.  Claim differentiation refers to the logical construct that where a dependent claim adds a narrowing limitation, the independent claim should be presumed to be broader, else the two claims would share the same scope.  *Bradford Co. v. Conteyor N. A., Inc.*, 603 F.3d 1262, 1271 (Fed. Cir. 2010); *Liebel-Flarsheim Co.*, 358 F.3d at 910.  Here, Defendants advocate that claim 16 should be construed to add the "directly" supported relationship between the mast beam and support beams of the frame, "each said longitudinally extending mast beam aligned with and supported ***directly*** by said bearing surface of one of said longitudinally extending support beams of said frame."  Dkt. 49 at 6 (emphasis original).  However, unasserted claim 17 which depends from claim 16 adds, "whereby extension and retraction of said rod of said actuator will slide said mast beams ***directly*** upon and along said bearing surface of said support beams of said frame."  '871 Patent at 10:63-66(emphasis added).  Although claim differentiation is less impactful than other claim construction tools, claim 17 would have little meaning if claim 16 is construed to include the "directly" limitation.

The nature of Defendants' proposed constructions also bears mention.  The claims of the '841 and '778 Patents are phrased in the commonly used "comprising" format, which is universally recognized to thereby include the recited elements as an open "including but not limited to" set.  *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the

---

tracks or rollers." Dkt. 57 at 16.  If "sliding means" connoted the absence of tracks or rollers, the qualification that this sliding means lacks tracks or rollers would be unnecessary.

claim.").  The practical impact of "comprising" claims is that infringement of the claims is determined by what a system includes – if an accused system includes the claimed combination of elements, the addition of extra elements has no impact on infringement.  Here, Defendants propose to introduce *negative* limitations, which list elements which the patented system lacks rather than listing what the patent system includes.  *See Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1351 (Fed. Cir. 2012).  The practical impact of such negative limitations is that an otherwise infringing system can be made non-infringing by adding something to the system.  *Id.* Historically, negative limitations were disfavored because defining what an invention *is not* is inherently imprecise, but the USPTO has permitted their use in more recent years provided the patentee is sufficiently clear in both the claim and supporting specification.  *Id.*; MANUAL OF PATENT EXAMINING PROCEDURE (2018), Chapter 2173.05(i) Negative Limitations.  The difficulty Defendants here face is that the claim language itself does not include a negative limitation; instead, it is Defendants' proffered construction that adds a prohibition on the use, for example, of intervening rollers.  Hearing Transcript 2/14/20 at 31:14-18.  Defendants do not cite any authority supporting the introduction of negative limitations as a matter of claim construction in a situation such as this.

There are certainly examples in caselaw where limitations are construed to introduce the kinds of conceptual limitations proposed by Defendants.  However, caution must be exercised against violating the fundamental precept against importing limitations absent compelling justification in the specification or prosecution history.  *See Phillips, 415 F.3d at 1323*; *see also Cisco Sys., Inc. v. TQ Delta, LLC*, 928 F.3d 1359, 1364 (Fed. Cir. 2019) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee

intended the claims to be so limited." (quoting *Liebel-Flarsheim Co.*, 358 F.3d at 913)); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."), *vacated on other grounds*, 575 U.S. 959 (2015). Analysis of the claim language currently before the Court does not provide justification for importing limitations from the specification. With that in mind, the Court turns to the other sources of intrinsic evidence in this case.

### B.     The Specification

The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1314-15 (quoting *Vitronics Corp.*, 90 F.3d at 1582); *Teleflex, Inc.*, 299 F.3d at 1325. Defendants argue that the common specification of the patents-in-suit ubiquitously describes mast structures that are moveable across a supporting frame without the use of tracks or rollers. Where a patentee chooses to describe an invention "repeatedly and consistently," such description may ultimately limit the scope of the claims. *Wis. Alumni Research Found. v. Apple Inc.*, 905 F.3d 1341, 1351–52 (Fed. Cir. 2018); *Bell Atl. Network Servs., Inc.,* 262 F.3d at 1268, 1273.

Defendants point to a number of disclosures in the specification where the patentee specifically cited the absence of tracks or rollers between the mast structures and supporting beams of the patents-in-suit. For example, the Abstract provides:

> A portable mast assembly is comprised of a skid assembly having a horizontally oriented frame comprised of longitudinally extending support beams and a mast assembly having at least two vertically extending columns that are supported directly upon a longitudinally extending mast beam without an intervening track or roller. A means for moving the mast beams along the top of the extending support beams of the frame without a roller is provided.

'841 Patent at Abstract. The Summary of the Invention also provides:

> The instant invention relates to a portable horizontally oriented skid. The skid supports a vertically oriented mast assembly. The mast assembly is comprised of at least two column assemblies that may be

> extended or retracted vertically as desired. The position of the mast
> assembly on the skid may be translatable horizontally without the
> need for tracks or rollers. The skid is positionable adjacent a wellhead
> for the purpose of performing P & A operations.

'841 Patent at 3:40-47.  Still further, Defendants point to the disclosure of mechanisms to provide for

movement of the mast structures but that makes no mention of rollers or tracks:

> This allows the mast assembly 14 to be slidable [sic] moved forward and
> rearward by means of sliding the mast support beams 48 along the top of
> support beams 24 of the skid assembly 12 by action of the actuators 32.

'841 Patent at 6:33-36.  Defendants did not assert that the above statements rise to the level of

disclaimer, requiring a "clear and unmistakeable" statement surrendering claim scope.   Hearing

Transcript 2/14/20 at 55:15-17; *Thorner v. Sony Compu. Entm't Am., LLC*, 669 F.3d 1362, 1367 (Fed.

Cir. 2012).  Instead, Defendants rely on the specification as an appropriate interpretive tool under

*Phillips.  Verizon Servs. Corp. v. Vonage Holdings Corp*., 503 F.3d 1295, 1308 (Fed. Cir. 2007)

("When a patent . . . describes the features of the 'present invention' as a whole, this description limits

the scope of the invention.").   In this case, the Summary of the Invention quoted above does

characterize "the instant invention," but it does so using permissive language.   The key sentence on

which Defendants rely is, "[t]he position of the mast assembly on the skid *may* be translatable

horizontally without the need for tracks or rollers."  '841 Patent at 3:44-46 (emphasis added).  This

statement does link the invention to the absence of tracks or rollers; however, it falls short of the kind

of characterization that would on its own justify importing the limitation into the claim.  Arguably, the

permissive nature of this language favors a construction that is agnostic as to the presence or absence

of rollers, with "may" suggesting that these are not essential to the invention.

As noted above, the Federal Circuit has "recognized that when a patent 'repeatedly and

consistently' characterizes a claim term in a particular way, it is proper to construe the claim term

in accordance with that characterization.  Here, the words 'pager' and 'pager units' appear in the

specification over 200 times . . . ." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370-71 (Fed. Cir.

2016) (internal citations omitted). However, the patents-in-suit do not include ubiquitous association of a claim term with a particular concept. Defendants cite two instances where the specification mentions tracks and rollers, and one structural description that portrayed direct interaction between the mast assembly and support beams. For its part, Plaintiff does not cite any disclosed embodiment that include rollers between the mast assembly and support beams. Overall, the specification is supportive of a construction that includes the limitations urged by Defendants, but the specification falls short of overcoming the presumption that the claim language should be interpreted as written. The instances cited by Defendants do not present the kind of repeated and consistent characterization that would justify reading a "no roller" or bearing "directly" limitation into the claims.

### C. The Prosecution History

The prosecution history often provides clear evidence of the understanding of the meaning of claim terms as the patentee and Patent Office were crafting the claims. *Phillips*, 415 F.3d at 1317; *Vitronics*, 90 F.3d at 1582-83 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."). The prosecution history provides unusually stark guidance informing claim construction issues in this case.

The claim terms at issue were the subject of a set of direct exchanges between the patentee and the USPTO. The relevant prosecution history begins with the claims as originally presented. Disputed claim 10 of the '841 Patent was originally presented as Claim 13[5] and is representative:

---

[5] Because of the cancellation of intervening claims, the claims were renumbered upon issuance of the '841 Patent, and claim 13 in the application became issued claim 10. Dkt. 56, Ex. C at 61.

13. A portable mast assembly comprising:

    (a)    a horizontally oriented frame, said frame having at least two longitudinally extending support beams;

    (b)    at least two longitudinally extending mast beams, each said longitudinally extending mast beam being positioned and supported directly upon one of said longitudinally extending support beams of said frame without a intervening roller;

    (c)    a vertically extendable and retractable column supported upon each said longitudinally extending mast beam;

    (d)    at least one horizontally oriented actuator having an extendible and retractable rod whereby extension and retraction of said rod will move said mast beams along said top of said frame support beams; and

    (e)    at least two vertically oriented actuators, each said actuator having an extendible and retractable rod whereby extension and retraction of said extendible and retractable rods extends and retracts said columns.

Dkt. 56, Ex. C at 255-256 (Original Application at 18-19). Notably, the original claims included the language Defendants seek to make part of the claim construction in this case, "each said longitudinally extending mast beam being positioned and supported ***directly*** upon one of said longitudinally extending support beams of said frame ***without a intervening roller***." The original claims were rejected over prior art including combinations of the Abadie Patent[6] and the Davies Patent[7] that disclose relevant mast assembly systems. Dkt. 56, Ex. C at 186-204 (Office Action of November 17, 2015). In response, the patentee did not amend the relevant "directly" or "without an intervening roller" recitations, but did dispute the rejection as follows:

> Claims 1-8, 13, 18, and 19 were rejected under 35 U.S.C. 103(a) as being unpatentable over Abadie (US 7,527,100 B2) in view of Davies et al (US 4,208,158). Those rejections can be found on pages 4-10 of the Office Action. Applicant respectfully traverses this rejection. It is respectfully submitted that Abadie teaches away from the combination with Davies et al., as Abadie states at col. 6 lines 57-60: "Rollers 35 attached to power swivel support frame 34 help overcome frictional forces so that power swivel support frame 34 can freely travel along the length of tracks 32 and 33." It would not be obvious to modify

---

[6] U.S. Patent No. 7,527,100
[7] U.S. Patent No. 4,208,158

Abadie by removing these rollers.

Dkt. 56, Ex. C at 164-176 (Applicant's Response of April 18, 2016). Notably, the applicant specifically relied upon the presence of rollers in the key Abadie Patent as a distinguishing characteristic of the claims.[8] Were this the only prosecution history, Defendants' construction arguments would be more compelling.

The prosecution continued, however, with a Final Rejection issued by the USPTO on August 10, 2016, where the Examiner did not find the "directly" or "without intervening rollers" to carry patentable weight over the Abadie/Davies combination:

> Davies is used to modify Abadie only to the extent of changing how the mast beams are secured to and travel along the base beams. The beams of Davies are not replacing the beams of Abadie, but the means of moving the mast assembly taught by Davies in combination with the assembly of Abadie would enable the mast assembly to move along the beams with the use of wheels.

Dkt. 56, Ex. C at 157 (Final Office Action mailed August 10, 2016 at 24).

At this point in the prosecution, the applicant effected a clear shift in the scope of the claims. In an After Final Amendment dated October 11, 2016, the applicant amended all pending claims to remove the "directly" and "without intervening roller" recitations. Again, claim 13 is exemplary as follows:

> 13.  (Currently Amended) A portable mast assembly comprising:
>
> (a)  a horizontally oriented frame, said frame having at least two longitudinally extending support surfaces, each support surface having a surface length;
>
> (b)  a mast structure having at least two longitudinally extending mast beams, each said longitudinally extending mast beam being

---

[8] Defendants make a terse "claims must be construed to preserve validity" argument at the close of their brief. Dkt. 57 at 25. Defendants fail to explain why their proposed constructions are required to maintain the validity of any claim. However, it bears mention that the Court has not been presented with the invalidity issues in this case and it may well be that the constructions urged by Plaintiff ease Defendants' task in proving invalidity.

aligned with, positioned and supported ~~directly~~ upon one of said longitudinally extending support surfaces of said frame ~~without an intervening roller~~;

(c)    a vertically extendable and retractable column supported upon each said longitudinally extending mast beam;

(d)    at least one horizontally oriented actuator having an extendible and retractable rod whereby extension and retraction of said rod will move said mast beams along <u>the</u> ~~said~~ top of said longitudinally extending support surfaces a maximum distance that is in between first and second spaced apart positions;

(e)    at least two vertically oriented actuators, each said actuator having an extendible and retractable rod whereby extension and retraction of said extendible and retractable rods extends and retracts said columns;

(f)    <u>a generally U-shaped lateral support that connects one column to the other column;</u> and

[[(f)]]  <u>(g)</u> wherein each mast beam has mast beam ends and a mast beam length between said mast beam ends that is shorter than said surface length.

Dkt. 56, Ex. C at 115-116 (After Final Amendment mailed October 11, 2016 at 4-5).

The applicant also made a clear statement highlighting the removal of these limitations:

> In all claims the following language or similar language was revised to remove "directly" and "without an intervening roller": "each said longitudinally extending mast beam positioned and supported directly upon one of said longitudinally extending support beams of said frame without an intervening roller". Nonetheless, all claims are believed to be allowable because the Patent Examiner apparently gave no patentable weight to this omitted language (please see paragraph spanning pages 5 and 6). Applicants removed this language because it appears that a copier has omitted this feature from equipment that appears to infringe at least some of the independent claims as now written.

Dkt. 56, Ex. C at 127 (After Final Amendment mailed October 11, 2016 at 16). The applicant

specifically stated the belief that these limitations had been given no patentable weight. *Id.*

On November 3, 2016, the USPTO issued an Advisory Action informing the applicant that the October 16 amendment would not be entered because it raised "new issues that would require further consideration and/or search."  Dkt. 56, Ex. C at 109 (Advisory Action of November 3, 2016 at 1.)  The fact that the Examiner found that the amendment would raise new issues suggests that the limitations in question did, in fact, bear on the patentability of the claims.  The Examiner in fact made this explicit, adding a note to the Advisory Action that provided:

> Amendments were made to the claims to eliminate language regarding the mast beams being supported "directly upon" the support beams "without intervening rollers". The elimination of these limitations [sic] broadens the claims and at the very least requires further consideration of the claims (specifically claims 9 and 14 which were indicated as allowable). Applicant mentions in the arguments that on pages 5-6 of the office action, that the office "apparently gave no patentable weight" to the language which has been removed, but this is not in fact true. The claim limitations were rejected under 103, providing a obviousness reasoning why one would want to support the mast beams directly on the support beams without intervening rollers. This does not suggest that the limitations have no patentable weight. Further search and consideration would be required.

*Id.* at 110 (Advisory Action of November 3, 2016 at 2.)  Defendants are correct that the Examiner did not agree that these limitations were immaterial to patentability.  Unfortunately for Defendants' position, the Examiner's comments also indicate that amendments were deemed to meaningfully broaden the scope of the claims.  If Defendants are correct that these limitations should be read into the claims despite the amendments deleting this language, the Examiner's comments would be wholly out of place.

In order to overcome the procedural obstacle presented by the Advisory Action, the applicant filed a Request for Continuing Examination.[9]  *Id.* at 100 (Request for Continuing

---

[9] A Request for Continued Examination is a standard procedural device whereby the USPTO collects an additional fee and the applicant continues prosecution.  *See* 37 CFR §1.114 (2018).

Examination Transmittal of November 10, 2016). The previously-filed after final amendment was entered with the filing of the Request for Continuing Examination. *Id.* The applicant and the Examiner apparently conducted an interview on March 24, 2017, which resulted in a further amendment filed on the same date. Dkt. 56, Ex. C at 84 (Supplemental Amendment mailed March 24, 2017 at 3). The amendments made in the March 24 paper were not relevant to the claim construction issues in dispute here.[10] *Id.* at 82-96 (Supplemental Amendment mailed March 24, 2017 at 1-15). Thereafter and without further comment, a Notice of Allowance for the '841 patent application was issued on March 30, 2017. Dkt. 56, Ex. C at 53 (Notice of Allowance and Fee(s) Due mailed March 30, 2017).

For its part, the '778 Patent does not contain relevant prosecution history beyond that summarized above for the '841 Patent. The '778 application is a continuation of the '841 Patent application filed just prior to the issuance of the '841 Patent and thus shares its prosecution history. Dkt. 56, Ex. D at 589, 596 (Filing Receipt of April 17, 2017 and Application Data Sheet 37 CFR 1.76). Although the '778 claims included the "directly upon" and "without intervening roller" limitations upon filing, the applicant made conforming amendments in an amendment mailed June 17, 2017, deleting those limitations prior to any substantive examination. *Id.* at 559-588[11] (Amendment in Response to Notice to File Missing Parts of June 19. 2017). No further prosecution history of the '778 Patent bears on the construction issues herein.

---

[10] The applicant did repeat the deletion of "directly" from claim 13, but that word was deleted previously in the After Final Amendment of October 16, 2016. *Compare* Dkt. 56, Ex. C at 87 and at 115 (Supplemental Amendment of March 24, 2017 at 6, and After Final Amendment of October 16, 2016 at 4).
[11] The copy of the prosecution history of the '778 Patent submitted as Exhibit D of Plaintiff's briefing appears to be misordered but has no effect on the construction issues herein.

The prosecution history places the instant claim construction disputes in clear relief. Each of the limitations Defendants urge be read into the claims—such as a requirement that the mast beams be supported "directly" upon the underlying frame, and that the mast beams be moveable across the support structures "without intervening tracks or rollers"—were part of the claims as originally presented. Dkt. 56, Ex. C at 255-256 (Original Application at 18-19). These limitations were removed during prosecution by a substantive amendment to each of the asserted claims. Dkt. 56, Ex. C at 112-128 (After Final Amendment mailed October 11, 2016 at 1-17). The broadening amendment was explicitly called to the attention of the Examiner and the Examiner's reaction was wholly consistent with a broadening amendment, requiring additional consideration and search. Dkt. 56, Ex. C at 109, 127 (After Final Amendment mailed October 11, 2016 at 16, Advisory Action of November 3, 2016 at 1). Thereafter, the claims were issued without the key language Defendants now urge should be added back into the claims.

Defendants' proposed constructions simply cannot be reconciled with the prosecution history. The limitations at issue were squarely in focus, were deleted, and that deletion was impactful to the overall course of the claims through the Patent Office. In order to adopt Defendants' proposed constructions, the Court would need to turn a blind eye toward the prosecution history. Prevailing Federal Circuit law counsels that interpreting claims to restore limitations purposefully and notoriously removed during prosecution would result in manifest error. *Laryngeal Mask Co. v. Ambu A/S*, 618 F.3d 1367, 1372-73 (Fed. Cir. 2010) (citing *Kistler Instrumente AG v. U.S.*, 628 F.2d 1303, 1308 (Ct. Cl. 1980) ("[Defendant's insistence upon this court's reading back into the claims limitations which were originally there and were removed during prosecution of the application through the Patent Office cannot be permitted.")). The

prosecution history leads to the conclusion that Plaintiff's plain and ordinary meaning construction is the better course in this case.

## VI.  CONCLUSION

Having fully considered the evidence of record and the arguments of counsel, the Court hereby construes the contested claim terms as follows:

| Claim Language | Court's Construction |
|---|---|
| **'841 element 10(b):**<br>**each said longitudinally extending mast beam being aligned with, positioned and supported upon one of said longitudinally extending support surfaces of said frame** | Plain and ordinary meaning |
| **'841 element 10(d):**<br>**will move said mast beams along the top of said longitudinally extending support surfaces** | Plain and ordinary meaning |
| **'841 element 16(b):**<br>**each said longitudinally extending mast beam aligned with and supported by said bearing surface of one of said longitudinally extending support beams of said frame** | Plain and ordinary meaning |
| **'841 element 16(c):**<br>**slide said mast beams of said mast assembly upon and along said bearing surface of said longitudinally extending support beams of said frame** | Plain and ordinary meaning |
| **'841 element 16(g):**<br>**said mast assembly is movable upon said skid** | Plain and ordinary meaning |
| **'841 element 16(h):**<br>**when the mast assembly moves between said first and second positions** | Plain and ordinary meaning |
| **'841 element 24(d):**<br>**a mast beam that is aligned with and that rests upon and transfers load to a said base beam** | Plain and ordinary meaning |
| **'841 element 24(e):**<br>**the mast being movable by sliding upon the base beams** | Plain and ordinary meaning |

| Claim Language | Court's Construction |
|---|---|
| **'841, element 24(h):**<br>**an actuator that moves the mast assembly relative to the base** | Plain and ordinary meaning |
| **'778 element 1(b):**<br>**each of said at least two longitudinally extending mast beams positioned and supported by one of said at least two longitudinally extending support beams of said horizontally oriented frame** | Plain and ordinary meaning |
| **'778 element 1(c):**<br>**means for moving said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame** | **Function**: "moving said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame.<br>**Corresponding structure**: at least one horizontally oriented actuator having an extendible and retractable rod, the at least one actuator being hydraulic, pneumatic, or mechanical (such as a horizontally oriented screw-type actuator), and equivalents thereof. |
| **'778 claim 2:**<br>**slidably retaining said at least two longitudinally extending mast beams upon said at least two longitudinally extending support beams of said horizontally oriented frame** | Plain and ordinary meaning |
| **'778 claim 3:**<br>**means for moving said at least two longitudinally extending mast beams along the top of said at least two longitudinally extending support beams of said horizontally oriented frame** | **Function**: "moving said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams of said horizontally oriented frame.<br>**Corresponding structure**: at least one horizontally oriented actuator having an extendible and retractable rod, the at least one actuator being hydraulic, pneumatic, or mechanical (such as a horizontally oriented screw-type actuator), and equivalents thereof. |

| Claim Language | Court's Construction |
|---|---|
| **'778 element 13(b):**<br>**each of said at least two longitudinally extending mast beams being positioned and supported by one of said at least two longitudinally extending support beams** | Plain and ordinary meaning |
| **'778 element 13(d):**<br>**move said at least two longitudinally extending mast beams along said at least two longitudinally extending support beams** | Plain and ordinary meaning |
| **'778 claim 15:**<br>**a guide for slidably retaining said at least two longitudinally extending mast beams upon said at least two longitudinally extending support beams of said horizontally oriented frame** | Plain and ordinary meaning |
| **'778 element 19 (b):**<br>**a mast assembly having at least two vertically extendable and retractable columns, each of said vertically extendable and retractable columns supported on a corresponding longitudinally extending mast beam, each said longitudinally extending mast beam positioned upon and supported by one of said longitudinally extending support beams of said frame** | Plain and ordinary meaning |
| **'778 element 19 (c):**<br>**said horizontally oriented actuator will slide said longitudinally extending mast beams of said mast assembly along said longitudinally extending support beams of said horizontally oriented frame** | Plain and ordinary meaning |

**THUS DONE AND SIGNED** in Lafayette, Louisiana, on this 20th day of March, 2020.

_____
MICHAEL J. JUNEAU
UNITED STATES DISTRICT JUDGE