UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SWIVEL RENTAL & SUPPLY, LLC      CIVIL ACTION NO. 6:18-1141

VERSUS      JUDGE JUNEAU

PETRO PULL LLC, ET AL.      MAGISTRATE JUDGE WHITEHURST

**RULING AND ORDER**

Pending before the undersigned is the Motion for Protective Order and Alternatively, to Disqualify Counsel [Doc. 145] filed by plaintiff, Swivel Rental & Supply, LLC.  The motion is opposed by defendants Petro Pull, LLC, Bacchus Lifting, LLC, Bowls Slips & Grips, LLC d/b/a BS&G Rentals, LLC, Dow Drobish, and Jason Bellard ("collectively, "defendants") [Doc. 159], and plaintiff filed a reply brief [Doc. 208].  For the following reasons, the motion is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

This patent infringement lawsuit was filed by Swivel Rental against defendants for alleged patent infringement of two of Swivel Rental's patents: (1) U.S. Patent No.9,650,841 ("the '841 Patent"), and (2) U.S. Patent No. 9,938,778 ("the '778 Patent"), both relating to a device designed and used by Swivel Rental as a Support Apparatus for Supporting Down Hole Rotary Tools.  Both patents pertain to surface equipment that can be used to support a device called a power swivel and

associated downhole rotary tools deployed within oil and gas wells. Generally, the surface assembly at issue can be used to perform rig-less plugging and abandonment ("P&A") operations.

Prior to the initiation of this lawsuit, defendant Petro Pull, plaintiff, and a third party formed a cooperative venture to provide such rig-less P&A services to third party customers. Pursuant to this venture, Petro Pull provided trolley baskets equipped with a horizontally-translatable table having rollers, the plaintiff supplied power swivels and associated supporting swivel stand structures, and the third party supplied downhole cutting tools. Plaintiff's power swivel and supportive structures were mounted on Petro Pull's basket/trolley system, thereby allowing the power swivel and supportive structure to move laterally or horizontally on Petro Pull's translatable table of the trolley system.

After the parties ceased working together, Bacchus Lifting had its own distinctive swivel stand built. The Bacchus Lifting swivel stand can be mounted on Petro Pull's laterally movable table. It is this combination of components – generally, the swivel stand provided by Bacchus Lifting and the underlying trolley system provided by Petro Pull -- that plaintiff contends infringe certain claims of the subject patents.

In the instant motion, plaintiff seeks to disqualify Jim Gibson, Charles Kreamer, and their firm from continuing to represent any of the defendants in the

present matter, on grounds these lawyers were members of the same firm which -- in 2009 – "represented Swivel Rental and/or Douglas Burns" in a lawsuit filed against Swivel Rental by Smith International. The 2009 Smith International litigation was commenced as a Petition for Permanent Injunction and Petition for Damages by Smith International and related to a dispute concerning a Consulting and Non-Compete Agreement and an Employment and Retention Bonus Agreement. The lawsuit was based on allegations that defendants, through the auspices of Swivel Rental & Supply, began equipment lease and rental operations contrary to their non-compete agreements. Smith International alleged that Douglas E. Burns and Robert M. "Mickey" Bee agreed to not engage in any power swivel business through either August 1, 2009 or March 1, 2010. In their opposition to the motion to disqualify, defendants clarify that attorney Glen Scott Love, of the law firm of Guglielmo, Marks, Schutte, Terhoeve & Love, was counsel of record for Swivel Rental & Supply, LLC and Robert Bee, while attorney Emile Joseph, Jr. was counsel of record for Douglas Burns.

    Defendants in this matter have sought significant discovery related to the 2009 Smith International lawsuit, which was ultimately dismissed after the parties reached a settlement, wherein the parties agreed and acknowledged that Swivel Rental's patent swivel stands did not copy the design of the Smith International swivel stand and was not based upon any design plans of any Smith International swivel stands.

Swivel Rental argues that the information related to the 2009 Smith International litigation is wholly irrelevant to the facts and contentions of Swivel Rental against the defendants in this matter for infringement of Swivel Rental patents on the swivel stands. Swivel Rental argues that despite the 2009 lawsuit being irrelevant to the instant litigation, defendants have pursed discovery concerning the 2009 litigation in an attempt to use such information to the disadvantage of Swivel Rental in the present litigation against defendants for infringement. Swivel Rental argues that because defense counsel Jim Gibson and Charles Kreamer were both members of the Allen & Gooch law firm in 2009 at the time that their partner Emile Joseph represented "Douglas Burns and/or Swivel Rental" in the Smith International litigation and throughout the negotiation of the settlement and ultimate dismissal of all claims, under Rule 1.9 of the Louisiana Code of Professional Conduct, both Gibson and Kreamer and their present firm must be disqualified from representing any of the defendants in this litigation due to the duties owed to a former client and the "obvious" conflict of interest.

## LAW AND ANALYSIS

**1.    Motion to Disqualify**

A motion to disqualify is a substantive motion that affects the rights of parties; analysis of the motion is therefore subject to the standards that have developed under federal precedents. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).

Attorneys practicing before this Court are subject to the Rules of Professional Conduct of the Louisiana State Bar Association, because these are the professional standards that have been adopted by our Local Rules.[1] L.R. 83.2.10. Nevertheless, as the Fifth Circuit has explained, "*how* these rules are to be applied are questions of federal law." *In re American Airlines, Inc.*, 972 F.2d at 610 (emphasis added). Furthermore, the Local Rules and the Rules of Professional Conduct are not the "sole authorit[ies] governing a motion to disqualify." *Id.*, *citing In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). Courts also consider the ABA's Model Rules of Professional Conduct and the ABA's Model Code of Professional Responsibility.[2] *Parker v. Rowan Companies, Inc.*, 2003 WL 22852218, at *2 (E.D. La. Nov. 25, 2003) (J. Vance), *citing Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001). Additionally, "[a] Court must take into account not only the various ethical precepts adopted by the profession but also the societal interests at stake." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).

---

[1] See Local Rule 83.2.4, which states:

> This court hereby adopts the Rules of Professional Conduct of the Louisiana State Bar Association, as hereafter may be amended from time to time by the Louisiana Supreme Court, except as otherwise provided by a specific rule of the courts.

[2] The Fifth Circuit has noted that the Louisiana Rules of Professional Conduct are identical to the ABA's Model Rules of Professional Conduct in all relevant aspects. *See* La. Rev. Stat. tit. 37, ch. 4, art. XVI, cited in *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).

The party seeking disqualification bears the burden of proving a conflict. *See United States v. DeCay*, 406 F. Supp. 2d 679, 683–84 (E.D. La. 2005), *citing Babineaux,* 2005 WL 711604, *2; *Parker v. Rowan Companies, Inc.,* 2003 WL 22208569, *8 (E.D.La. Sept.23, 2003); *Cramer v. Sabine Transp. Co.,* 141 F.Supp.2d 727, 730 (S.D.Tex.2001). Moreover, "[a] disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing. Therefore, notwithstanding the fundamental importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification ... is a sanction that must not be imposed cavalierly." *F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1316 (5th Cir.1995).

Rule 1.9 of the Louisiana Code of Professional Conduct applies to conflicts of interest and the duties to former clients. Specifically, Rule 1.9 states in pertinent part:

> a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> > (1) whose interests are materially adverse to that person; and

>   (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>   (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or requires with respect to a client, or when the information has become generally known . . .

In addition to professional conduct rules, courts in this circuit have also employed a "substantial relationship" test to guide the conflict inquiry. *DeCay*, 406 F. Supp. 2d at 684. Under that test, "[a] party seeking to disqualify counsel ... need not prove that the past and present matters are so similar that a lawyer's continued involvement threatens to taint the trial. Rather, the former client must demonstrate that the two matters are substantially related." *U.S. v. Edwards,* 39 F.Supp.2d 716, 734 (M.D. La. 1999), *citing In re American Airlines, Inc.,* 972 F.2d 605, 616 (5th Cir.1992). *Edwards* went on to opine that a substantial relationship "may be found only after the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent.'" *Id.* at 734, *quoting American Airlines,* 972 F.2d 605.

Defendants argue that no section of Rule 1.9 governs the instant motion

because Emile Joseph – the former law partner of the defense attorneys in the instant litigation -- did not represent **Swivel Rental** in the Smith International litigation. Rather, he represented **Doug Burns** in an employment/non-compete dispute. Furthermore, defendants present the affidavits of both Mr. Gibson and Mr. Kreamer, in which both lawyers attest, under oath, they have no knowledge of the representation of Mr. Burns at their prior law firm; deny that they had any knowledge of the existence of the Burns employment dispute/litigation; and deny that they had any involvement whatsoever in the Burns employment litigation case.

Defendants also argue that disqualification under Rule 1.9 requires that a lawyer whose former firm represented a party must have obtained some level of confidential or privileged information of that party, and that the plaintiff has failed to carry its burden of showing that Mr. Gibson and Mr. Kreamer, in fact, acquired confidential information during the Smith International litigation. In *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 300–01 (5th Cir. 2009), the Fifth Circuit addressed the rules regarding imputation of conflicts to members of a firm. Although the court in *In re ProEducation* was considering the Texas rule on conflicts, the discussion is relevant and persuasive here. In *In re ProEducation*, attorney Kirk Kennedy was an associate in the law firm of Jackson Walker L.L.P. from February 2003 to November 2004. Another Jackson Walker attorney, Lionel Schooler, had been representing MindPrint, Inc., a creditor in the bankruptcy

proceeding of ProEducation International, Inc., since 1999. Kennedy had no knowledge of or involvement with MindPrint while at Jackson Walker. Kennedy left Jackson Walker in 2004, and in September 2006, Kennedy entered an appearance on behalf of Dr. Mark D'Andrea, a creditor in the ProEducation proceeding. Upon motion by MindPrint, the bankruptcy court disqualified Kennedy based on an imputed conflict of interest but declined to impose monetary sanctions. The district court affirmed the bankruptcy court on both issues. Kennedy appealed the disqualification order and MindPrint cross-appealed the denial of monetary sanctions. On appeal, the Fifth Circuit reversed the disqualification order.

In finding that there was no conflict of interest, the Fifth Circuit explained the scope of Texas Rule of Professional Conduct 1.09(b), stating:

> Under Texas Rule 1.09(b), the personal conflicts of one attorney are imputed to all other members of a firm. *Id.* 1.09(b). Comment 7 to Rule 1.09 states that this imputation can be removed when an attorney leaves a firm, stating that "should ... other lawyers cease to be members of the same firm as the lawyer affected by paragraph (a) *without personally coming within its restrictions,* they thereafter may undertake the representation against the lawyer's former client unless prevented from doing so by some other of these Rules." *See id.* 1.09 cmt. 7 (emphasis added). The Texas Rules and the accompanying comments do not expressly describe the burden of proof or who bears the burden on the issue of whether a lawyer personally came within the restrictions of Rule 1.09(a). The Texas Supreme Court has not yet addressed the application of Texas Rule 1.09 to this precise fact pattern.
>
> The relevant Model Rule, Rule 1.9(b), uses slightly different language than the Texas Rule:

> A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> Model Rules of Prof'l Conduct R. 1.9(b) (2006).
>
> **Regardless of linguistic differences, the two codes produce the same result in application—they both require that a departing lawyer must have actually acquired confidential information about the former firm's client or personally represented the former client to remain under imputed disqualification**.

*In re ProEducation*, 587 F.3d at 296, 300–01. In finding that Kennedy had not, in fact, acquired any confidential information, the court stated:

> The evidence reflects that while at Jackson Walker, Kennedy never personally represented MindPrint, nor did he gain any actual knowledge of MindPrint. At the evidentiary hearing before the bankruptcy court, Kennedy testified that he never heard of MindPrint while he was at Jackson Walker and that he never attended any firm meetings where the representation of MindPrint was discussed. He further testified that he had never met Al Winters, the principal of MindPrint, and that he first learned that Schooler was representing MindPrint in "May or June of 2005," about six months after he left Jackson Walker.
>
> MindPrint did not present any evidence to contradict Kennedy's testimony.

*Id.* at 303.

In the instant case, both Mr. Gibson and Mr. Kreamer filed similar affidavits, wherein they attest that they did not actually acquire any confidential information about the Swivel/Smith International litigation. Mr. Kreamer's affidavit states:

> 2. Years before Jim Gibson and I left Allen & Gooch to form Gibson Law Partners, LLC, a partner at Allen & Gooch, Emile Joseph, represented Doug Bums in a lawsuit filed by Smith International. The lawsuit was generally accusing Burns and others of breaching his noncompete agreement with Smith over swivel stands that Burns sold for Smith and was now allegedly selling his own version when Burns left. Neither Jim Gibson nor Charles Kreamer had any knowledge of Emile Joseph's representation of Burns. Neither Jim Gibson nor Charles Kreamer had any knowledge of the existence of the Burns employment dispute/litigation. Neither Jim Gibson nor Charles Kreamer had any involvement whatsoever in the Burns employment litigation case handled by Emile Joseph. The Smith case did not progress and was dismissed.
>
> 3. Emile Joseph has never been associated with Gibson Partners. No lawyers working for Gibson Partners ever worked on the matter in which Emile Joseph represented Burns. Gibson Partners has no confidential information relating to the Emile Joseph representation of Doug Burns in the lawsuit filed by Smith lnternational. Gibson Partners never represented Swivel Rental & Supply, Inc.[3]

This Court notes that the severe remedy of disqualification cannot be granted on generalities. *Microsoft Corp. v. Commonwealth Sci. & Indus. Research Organisation*, 2007 WL 4376104, at *9 (E.D. Tex. Dec. 13, 2007), *aff'd sub nom. Commonwealth Sci. & Indus. Research Organisation v. Toshiba Am. Info. Sys., Inc.*, 297 F. App'x 970 (Fed. Cir. 2008). While plaintiff is not required to *produce* the

---

[3] Mr. Gibson's Affidavit is virtually identical to Mr. Kreamer's Affidavit.

˅11˅

actual confidential information it alleges has been shared, it has the burden to delineate with specificity *what* confidential information was shared. The undersigned concludes that the plaintiff has failed to do so in this matter.

Therefore, after consideration of the arguments of the parties, and based upon this Court's analysis of the Louisiana Rules of Professional Conduct, the local rules of this Court, the ABA's Model Rules of Professional Conduct, as well as the societal interests at stake, the undersigned concludes that the plaintiff has not carried its burden in this case of showing that a conflict exists. The briefs of the parties demonstrate that Emile Joseph -- the former law partner of the defense attorneys in this matter – did not represent Swivel Rental in the Smith International litigation. Rather, he represented Doug Burns in an employment/non-compete dispute. Furthermore, the plaintiff has not demonstrated that the instant litigation -- a patent infringement matter over patents not issued until 2017 and 2018 -- is either the same or substantially similar to the Smith International matter, which was a lawsuit to enforce a non-compete agreement. Finally, the undersigned notes that both Mr. Gibson and Mr. Kreamer have stated under oath that they did not actually acquire any confidential information about the Swivel Rental/Smith International litigation, and the plaintiff has failed to successfully contravene this argument.

Finally, the undersigned takes notice that the instant motion was filed almost two years after the case was filed and just several months before the initial trial

setting for this matter. "Waiver of a motion for disqualification of counsel is proper where the delay in moving for disqualification is for an extended period of time, or where it is done on the eve of trial." *Abney v. Wal-Mart,* 984 F.Supp. 526, 530 (E.D.Tex.1997) (Schell, C.J.). The plaintiff has not explained why the instant motion was filed so close to the trial date. This Court is mindful that if it were to grant the instant motion – which it is not inclined to do, on the basis of the discussion hereinabove – the ends of justice would not be served, as defendant would be prejudiced at this late date without the counsel it has had throughout the pre-trial phase of this litigation. In short, the societal interests at stake militate in favor of denying the instant motion on the basis of the delay in urging it.

Considering the foregoing, the motion to disqualify is denied.

**2.    Motion for Protective Order**

Plaintiff moves for a protective order under Federal Rule of Civil Procedure 26(c)(1)(A), seeking an order from this Court stating that all discovery propounded by the defendants on Swivel Rental regarding the 2009 Smith International lawsuit and the information surrounding the same "is not relevant and thus further discovery should be forbidden under Federal Rule of Civil Procedure Rule 26(c)(1)(A) by a protective order to avoid annoyance and undue burden and expense." Swivel Rental also requests an order "quashing all depositions and subpoenas served by defendants on Smith International, Inc., Tobin Eason, Glenn Scott Love, Emile Joseph, Robert

Bee, Douglas Burns and Swivel Rental regarding requests for such information." Finally, Swivel Rental requests that the Court issue an order "prohibiting and precluding any outstanding discovery requests by defendants to any party or witnesses regarding the 2009 Smith International litigation as being irrelevant to the present litigation." Swivel Rental cites this Court to no jurisprudence supporting its argument, other than the federal rule of civil procedure which governs protective orders.

    Defendants argue that the Smith International litigation is indeed relevant to the issues and claims in the instant lawsuit, inasmuch as one of the defendants' primary defenses to the instant patent infringement lawsuit is that Swivel Rental does not own the subject patent(s). Because of this, defendants argue there can be no infringement. Defendants further argue that the discovery they have propounded on the plaintiff related to the Smith International litigation is relevant to the issue of the ownership of the patent.

    Defendants' argument is well-taken. Defendants should be permitted to pursue their theory that the patents in suit were derived from or owned by another. Under the liberal discovery rules of this Court, the scope of discovery includes any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, and information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26. The plaintiff has not

successfully demonstrated that the requested discovery is overly burdensome or otherwise too broad given the facts and circumstances of the case as well as the breadth of previous discovery. For this reason, the motion for protective order is denied.

For the foregoing reasons, IT IS ORDERED that the Motion for Protective Order and Alternatively, to Disqualify Counsel [Doc. 145] filed by plaintiff, Swivel Rental & Supply, LLC., is DENIED.

**THUS DONE AND SIGNED** this 3rd day of March 2021 at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE